MARY JAKEMAN, in Her Own Behalf, FLORA JAKEMAN, HATTIE JAKEMAN, ROSE JAKEMAN and VICTORIA JAKEMAN, by Their Guardian Ad Litem, MARY JAKEMAN, Respondents, v. OREGON SHORT LINE RAILROAD COMPANY, a Corporation, P. J. McDERMOTT, J. S. STODDARD, A. E. GRAHAM and CURTIS B. HILL, Appellants.

[256 Pac. 88.]

EVIDENCE—REMOTENESS—NEGATIVE EVIDENCE—RAILROADS—ACCIDENTS AT CROSSINGS — SIGNALS—DUTY OF RAILROAD — ADMISSIBILITY OF EVIDENCE—MODE OF TRAVEL OF PERSON INJURED—CONDITION OF SIGNAL — INSTRUCTIONS TO JURY — APPLICABILITY TO EVIDENCE— LIABILITY OF RAILROAD EMPLOYEES — GENERAL VERDICT — APPEAL AND ERROR.

1.   Evidence in action against railroad for death in crossing collision, to effect that locomotive carried a dead headlight, which was traced to almost the scene of accident, *held* not too remote for probative value.

2.   Testimony to effect that headlight of railroad locomotive was not burning shortly before crossing collision resulting in death, and that automatic bell at crossing did not ring regularly, *held* entitled to consideration, although negative in character.

3.   Railroad, installing automatic signal in rural community, which was not required by law, nevertheless has duty, after installation, of exercising ordinary diligence to maintain signal in working order.

4. Mode of travel, used by person crossing railroad tracks, is to be considered along with all other evidence in determining liability for death resulting from collision with train.

5. In action against railroad for death resulting from collision at highway crossing, testimony relative to automatic bell at crossing being out of order four or five days after accident and that bell did not work in forepart of month in which accident occurred, *held* inadmissible as being *too remote.*

6. Giving instruction unsupported by evidence, although law stated is abstractly correct, *held* not prejudicial error, unless it is apparent that instruction confused or misled jury to prejudice of losing party.

7. Where record in action against railroad, engineer, fireman, conductor and head brakeman for death in crossing collision is silent as to negligence of fireman and head brakeman, judgment against brakeman and fireman must be reversed; there being no duty, at least on brakeman, imposed by Comp. Stats. 1919, sec. 4820, relative to sounding bell or whistle.

8. Where several grounds of negligence are alleged in complaint, verdict on any one of which would entitle plaintiff to relief prayed for, and general verdict is rendered for plaintiff, an error in admission of evidence or giving of instruction on any one of grounds will necessitate a reversal.

APPEAL from the District Court of the Ninth Judicial District, for Jefferson County. Hon. H. F. Ensign, Judge.

Action for damages. Judgment for respondents. *Reversed.*

**Publisher's Note.**

1. Admissibility of negative inferences as to railroad signals, see notes in L. R. A. 1918A, 744. Weight of such evidence, see notes in 12 *Ann. Cas.* 1035; 18 *Ann. Cas.* 633; *Ann. Cas.* 1916A, 163. See, also, 22 R. C. L. 1057.

3. Right of traveler to rely on automatic signals at crossing, see note in L. R. A. 1916D, 788.

See Appeal and Error, 4 *C. J.*, sec. 2953, p. 972, n. 70; sec. 3015, p. 1033, n. 37; sec. 3026, p. 1043, n. 44.

Evidence, 22 C. J., sec. 90, p. 162, n. 71; sec. 94, p. 169, n. 34 New.

Railroads, 33 *Cyc.*, p. 728, n. 99; p. 943, n. 60 New; p. 1004, n. 5 New; p. 1082, n. 85.

Geo. H. Smith, H. B. Thompson and J. H. McEvers, for Appellants.

Proof that an engine was traveling at a given point with its headlight out, raises no presumption that it continued to travel without a headlight burning, and proof that a stationary crossing bell was at some remote time out of order raises no presumption that it continued out of order. (Chamberlayne's Handbook on Evidence, sec. 416, pp. 258, 259; *High v. Bank of Commerce,* 103 Cal. 525, 37 Pac. 508; *Connolly v. Industrial Acc. Com.,* 173 Cal. 405, 160 Pac. 239; *Collins v. Thode,* 54 Mont. 405, 170 Pac. 941; *Pilmer v. Boise Traction Co.,* 14 Ida. 327, 125 Am. St. 161, 94 Pac. 432, 15 L. R. A., N. S., 254; *Fleenor v. Oregon Short Line R. Co.,* 16 Ida. 781, 102 Pac. 897.)

A presumption of continuance does not run backward. (*People v. Quong Sing,* 20 Cal. App. 806, 127 Pac. 1056, *Tonopah & G. R. Co. v. Fellenbaum,* 32 Nev. 278, 107 Pac. 882, L. R. A. 1918D, 584; *Ellis v. State,* 138 Wis. 513, 131 Am. St. 1022, 119 N. W. 1110, 20 L. R. A., N. S., 444.)

An inference upon an inference, or a presumption upon a presumption, cannot be allowed. (Chamberlayne's Handbook on Evidence, sec. 415, p. 258; *Manning v. John Hancock Mut. Life Ins. Co.,* 100 U. S. 693, 25 L. ed. 763; *Duncan v. Chicago, R. I. & P. R. Co.,* 82 Kan. 230, 108 Pac. 102; *Looney v. Metropolitan R. Co.,* 200 U. S. 480, 26 Sup. Ct. 303, 50 L. ed. 564.)

The burden is on plaintiffs to plead and prove negligence. If the proof fails to establish the negligence alleged in the complaint, they cannot recover. (*McLean v. City of Lewiston,* 8 Ida. 472, 69 Pac. 478; *Graham v. Coeur d'Alene, & St. Joe Transp. Co.,* 27 Ida. 454, 149 Pac. 509; *Fimple v. Southern Pac. Co.,* 38 Cal. App. 727, 177 Pac. 874; *Antler v. Cox,* 27 Ida. 517, 149 Pac. 731; 20 R. C. L., sec. 161, p. 194.)

Thirty miles an hour is not an excessive rate of speed in a rural community. (*Burrow v. Idaho & W. N. R. Co.,* 24 Ida. 652, 135 Pac. 838; *Sandoval v. Atchison, T. & S. F. R. Co.,* 30 N. M. 343, 233 Pac. 840.)

Negative testimony must yield to positive testimony, and unless negative testimony is clear and convincing, it raises no conflict. (*Burrow v. Idaho & W. N. R. Co., supra; Igle v. People's Ry. Co.,* 5 Del. 376, 93 Atl. 666; *Missouri, K. & T. Ry. Co. v. McCoy,* 7 Ind. Ter. 288, 104 S. W. 620; C. S., secs. 4796, 4820.)

It is prejudicial error to give an instruction, even though the law stated be abstractly correct, where there is no evidence to support it. (14 R. C. L., sec. 51, p. 786; *Russell v. Oregon R. & N. Co.,* 54 Or. 128, 102 Pac. 619; *Chicago, R. I. & P. R. Co. v. Huston,* 95 U. S. 697, 24 L. ed. 542.)

It is immaterial whether the bell on the engine was not rung or the whistle was not blown, inasmuch as the stationary crossing bell was ringing, and had Jakeman listened, he would have heard it. (*Chicago, M. & St. P. R. Co. v. Clarkson,* 147 Fed. 397, 77 C. C. A. 575; *Turnier v. New York Cent. R. Co.,* 124 Misc. Rep. 269, 207 N. Y. Supp. 316; *State v. Maine C. R. Co.,* 76 Me. 357, 49 Am. Rep. 622.)

A joint judgment against two or more joint tort-feasors is an entirety and indivisible. If it is void as to one, it is void as to all. (*Finley v. Southern Ry. Co.,* 5 Ga. App. 722, 64 S. E. 312; *Woods v. Bowman,* 200 Ill. App. 612; *Contakis v. Flavio,* 221 Mass. 259, 108 N. E. 1045; *Anderson v. Fruitvale Transp. Co.,* 195 Mich. 734, 162 N. W. 273; *Davis v. Whiting & Son Co.,* 201 Mass. 91, 18 A. L. R. 782, 87 N. E. 199.)

**C. A. Bandel, J. H. Peterson and T. C. Coffin, for Respondents.**

"Evidence of witnesses who were near a train at the time of the accident at a crossing that they heard neither the whistle nor bell till the train passed the crossing, is not merely negative, but is sufficient to show that the proper signals were not given." (*Mackrall v. Omaha & St. L. R. Co.,* 111 Iowa, 547, 82 N. W. 975; *E. Bradford Clarke Co. v. Baltimore & O. R. Co.,* 27 Pa. Super. Ct. 251; *Cotton v. Willmor & S. F.,* 99 Minn. 366, 9 Ann. Cas. 935, 109 N. W. 835, 8 L. R. A., N. S., 643; *Gibson v. Bessemer & L. E. R. Co.,* 226 Pa. 198, 18 Ann. Cas. 535, 75 Atl. 194, 27 L. R. A.,

N. S., 689; *Walters v. Chicago, Milwaukee & Puget Sound Ry. Co.,* 47 Mont. 501, 133 Pac. 357, 46 L. R. A., N. S., 702.)

The warning given by railroads on approaching dangerous crossings must be commensurate and reasonable under all the circumstances. (*Spitzer v. New York Central R. R. Co.,* 211 App. Div. 332, 207 N. Y. Supp. 312; *Rayme v. Rutland R. C. Co.,* 204 App. Div. 135, 198 N. Y. Supp. 261; *Green v. Southern Pac. Co.,* 53 Cal. App. 194, 199 Pac. 1059; *Missouri, K. & T. Ry. Co. v. Stanton,* 78 Okl. 167, 189 Pac. 753; *Sipowicz v. Lehigh Valley R. Co.,* 188 App. Div. 715, 179 N. Y. Supp. 243; *Chesapeake & O. Ry. Co. v. Steele,* 84 Fed. 93; 29 C. C. A. 81; *Pennsylvania R. Co. v. Miller,* 99 Fed. 529, 39 C. C. A. 642; *Reed v. Queen Anne's R. Co.,* 4 Del. 413, 57 Atl. 529; *Ortolano v. Morgan's L. & T. R. & S. S. Co.,* 109 La. 902, 33 So. 914; *English v. Southern Pac. Ry. Co.,* 13 Utah, 407, 57 Am. St. 772, 45 Pac. 47, 35 L. R. A. 155.)

"A railroad company, having installed an automatic bell at a crossing to warn travelers, is bound to use reasonable care to keep it in good condition, though there is no law requiring it to be installed." (*Lake Erie & W. R. Co. v. Howarth,* 73 Ind. App. 454, 127 N. E. 804; *Washington v. Birmingham Southern R. Co.,* 203 Ala. 295, 82 So. 545; *Lake Erie & W. R. Co. v. Howarth,* 73 Ind. App. 454, 124 N. E. 687; *Metcalf v. Central Vermont Ry. Co.,* 78 Conn. 614, 63 Atl. 633; *Cleveland, C. C. & St. L. Ry. Co. v. Coffman,* 30 Ind. App. 462, 64 N. E. 233, 66 N. E. 179.)

"Joint tort-feasors being ordinarily jointly and severally liable, judgment may for that reason be against part of them and in favor of the remainder although all are sued jointly." (1 Freeman on Judgments, 5th ed., sec. 109, p. 196; 1 Black on Judgments, par. 207, p. 307; *Hayden v. Woods,* 16 Neb. 306, 20 N. W. 345; *Gross v. Scheel,* 67 Neb. 223, 93 N. W. 418; *Sparrow v. Bromage,* 83 Conn. 27, 19 Ann. Cas. 796, 74 Atl. 1070, 27 L. R. A., N. S., 209; *Albright v. McTighe,* 49 Fed. 817.)

BAUM, District Judge.—This is an action instituted by Mary Jakeman in her own behalf and as guardian for the

minor children of Mary Jakeman and James W. Jakeman, deceased, against the defendants, Oregon Short Line Railroad Company and four members of the train crew, to recover damages for the death of James W. Jakeman, which occurred in a crossing accident shortly after 7 o'clock P. M. on October 18, 1923, at a railroad crossing about one mile north of Rigby, Idaho. The complaint contains the usual averments as to the defendant being a common carrier and alleges that McDermott was the engineer, Stoddard the fireman, Graham the conductor and Hill the head brakeman on the train. As grounds for negligence the complaint alleges:

1. Traveling at a high, dangerous, reckless and negligent rate of speed.

2. Failure to display a headlight or other light on the engine.

3. Failure to blow a whistle or ring any bell as the train approached the crossing, or to give any warning of the rapid approach of the train.

4. Failure to provide and maintain a proper, reasonable or adequate signaling device or other means of giving warning of trains approaching the crossing.

The case was tried before a jury and resulted in a verdict for the plaintiff, respondent herein, and against the defendants, the appellants herein. This appeal is from the judgment entered on the verdict.

The accident occurred during that period that dusk molds into darkness.

Appellants made thirty assignments of error. No particular discussion will be had of each of these assignments. A *résumé* of the evidence where assignments of error relate thereto will be given. No evidence except that given by the train crew was adduced in support of the first ground of negligence, and the speed, as shown by the evidence was not excessive. (*Sandoval v. Atchison T. & S. F. Ry. Co.,* 30 N. M. 343, 233 Pac. 840.)

Relative to the second ground of negligence, evidence was produced that the train in question, consisting of an engine and caboose, was proceeding north from Ucon to a point north of Rigby and beyond the crossing where the accident

occurred, which was about one mile north of Rigby. Ucon is located about six miles south of Rigby and when the train was about three-fourths of a mile north of Ucon the engine bore a dead headlight. This condition existed about half-way between Ucon and Rigby, at Rigby and about a quarter of a mile north of Rigby, and from only five to ten minutes had elapsed from the time the headlight was first noticed to be out and the accident. Also the engineer in charge of the train stated that after the accident he proceeded to the front of the engine, among other things, to see if the head-light was burning. We do not mean that all of the evidence was as stated above, as appellant's witnesses stated the contrary fact.

Appellants maintain that such evidence was too remote to have any probative value.

[1] Such contention might be correct if it was not for the fact that the dead headlight was traced from a point three-fourths miles north of Ucon to almost the scene of the accident, and the short space of time intervening from the time the train was seen north of Ucon until the time of the accident.

Considerable evidence was introduced in support of the third ground of negligence, likewise in opposition thereto. As to whether appellants were negligent as contended in grounds two and three was properly submitted to the jury, there being no reversible error in the introduction of testimony or the giving of the instructions, except as hereinafter noted as to the giving of instruction number 17, hence no further discussion will be had thereon, save as to the effect of negative testimony.

The evidence introduced touching on the fourth ground of negligence was somewhat varied. One of respondent's witnesses testified that he crossed this crossing numerous times during the month of October and that during the fore part of the month the stationary bell would not ring while trains were passing over the crossing, and that from four to six days after the accident in question he noticed a person presumably an employee of the appellant, Oregon Short Line Railroad Company, working on the bell. Another wit-

ness testified that on the day in question the bell did not ring as trains passed over the crossing and that at other times it did ring. Respondent also introduced evidence that, while the bell in question was of standard design, at or near Lava Hot Springs, Idaho, and at other points on the system of the appellant, Oregon Short Line Railroad Company, a newer design of bell was used, namely, one with a swinging disc. The bell in question was shown, quite conclusively, to be ringing immediately after the accident and while the train was standing on the crossing. The bell was an automatic one, and when working properly, would ring, when the train was proceeding northward from a point about 1972 feet to the south until the train had cleared the crossing.

[2] Appellant maintains that the court should ignore the testimony of various witnesses for the respondent owing to the fact that the testimony given by such witnesses was negative in character, and cites numerous cases in support of such contention. There is no need for us to go further than our own court for an authority on this matter, namely: *Fleenor v. Oregon Short L. R. Co.*, 16 Ida. 781, 102 Pac. 897; and the position taken therein, to us, appears reasonable, logical and correct. An application of the rule laid down in the last mentioned case to the testimony in the instant case disposes of a number of appellant's assignments, and causes us to come to the conclusion that no error was committed by the trial court on this score. The negative testimony as given touches the last three grounds of negligence alleged.

[3] Appellants maintain that the evidence as to the operation of the bell the fore part of October, as well as the evidence as to someone working on the bell four to six days subsequent to the accident is too remote. No statutory duty required the appellant, Oregon Short Line Railroad Company, to install and maintain a bell at the crossing in question. The same was located in a rural community, although, if such a bell was installed, ordinary diligence must be exercised to maintain the bell in working order. (*Louisville*

*& N. R. Co. v. Adams,* 205 Ky. 203, 265 S. W. 623.)   The allegation of respondent relating to the fourth ground of negligence causes us to infer that respondent contends that it was the duty of the railroad company to "provide and maintain" a permanent signaling device at this crossing, and to sustain this contention it is alleged (1) that the crossing is located in a populous section of the country and used largely by the residents thereof; (2) that the highway is skirted on the south, at the immediate approach to the railroad crossing, by a grove of trees partially obscuring a plain view of the railroad to the south of the crossing.   It will be noted that there is no allegation to the effect that there was anything that would obstruct or interfere with a traveler's ability to hear the regulation statutory signals of the approach of the train to the crossing, were they given, and it is not contended that there was anything on the right of way that would obstruct the view, or that defendant was responsible for the trees that were along the road.

[4]   The deceased Jakeman was very familiar with the crossing, having used the same for about three years and the crossing being in the same condition the night of the accident that it had been for that period of time.   Jakeman was traveling by auto and in charge thereof.   The mode of travel used by a person crossing railroad tracks is to be considered along with all the other evidence in the case.   (*Robison v. Oregon-Washington R. R. & Nav. Co.,* 90 Or. 490, 176 Pac. 594; *Morehead v. Atchison, T. & S. F. Ry. Co.,* 27 N. M. 349, 201 Pac. 1048; *Winter v. New York & L. R. R. Co.,* 66 N. J. L. 677, 50 Atl. 339; *Olds v. Hines, Director General, etc.,* 95 Or. 580, 187 Pac. 586, 188 Pac. 716; *Morinci So. Ry. Co. v. Monsour,* 21 Ariz. 148, 185 Pac. 938.)

The position of the respondent is that all of the circumstances that could be imagined to make the crossing in question one of the most dangerous ones were present, and that the duty devolved upon the Railroad Company to adopt a reasonably adequate device or means to notify travelers.   To substantiate this theory respondent produced the proof above mentioned as to the bell with a swinging disc, notwithstand-

43 Idaho—33

ing the fact that the respondent's one witness on this point testified that the bell installed at the crossing in question was of standard design and in common use. The road at the crossing in question is a public highway and serves a rural community consisting of farmers living to the east of the crossing. In approaching the crossing in question from the west it is necessary to cross a spur-track or switch-track before arriving at the crossing over the main line. The following diagram shows the relative position of the two tracks, right of way and stationary bell and trees that respondent complains of:

The trees complained of are outside of the right of way, there being no trees or other obstructions on the right of way. The right of way at this point is 100 feet wide and in approaching the track from the west at a point 91.2 feet from the center of the crossing, Jakeman could have seen south along the track 60 feet. At a point 71 feet from the center of the main track at the crossing, the main line can be seen 250 feet south of the crossing, and at 65 feet from the crossing, the main line track can be seen a distance of approximately 850 feet.

[5]   The only possible purpose that the testimony pertaining to the working on the bell four to six days after the accident could have, was to permit the jury, if they believed the testimony of the witness, to indulge in the presumption that the bell was out of order four to six days after the accident, and, therefore, that it was out of order on the date of the accident. Presumption seldom, if ever, runs backward. The time given by the witness was too remote. Likewise, the time that the same witness testified that the bell did not work in the fore part of October invited the jury to indulge in the most fanciful and remote speculation. In fact, we might say that the testimony relating to the working on the bell four to six days after the accident was endeavoring to base an inference on an inference and a presumption on a presumption. (*Beeler v. Atchison, T. & S. F. Ry. Co.*, 107 Kan. 522, 192 Pac. 741. See, also, *Holt v. Spokane etc. Ry. Co.*, 3 Ida. 703, 716, 35 Pac. 39.)

[6]   Appellants maintain that it is prejudicial error to give an instruction, even though the law stated be abstractly correct, where there is no evidence to support it, but we find that this statement is incomplete; there must be added thereto, "and where it is apparent that the instruction confused or misled the jury to the prejudice of the losing party." It is not apparent from a reading of the record that the giving of the instruction complained of misled or confused the jury; thereby no reversible error was committed. (*Inner Shoe Tire Co. v. Mueller et al.*, 108 Okl. 229, 235 Pac. 1072.)

The respondent sought to recover, not only against the Oregon Short Line Railroad Company but against four members of the train crew. Appellants McDermott, Stoddard, Graham and Hill in due form and at proper time made a motion for nonsuit which was by the court refused. This was error, at least as to two of the defendants, as is hereinafter noted.

[7]   While we have common knowledge of the duties generally of the engineer, fireman, conductor and head brakeman, such common knowledge is not ample, standing alone, to cause us to uphold the judgment at least against the fireman and head brakeman, as the record is silent as to just in what manner the fireman and head brakeman were negligent.

The court instructed the jury, instruction number 17 (assignments of error 23, 24, 25, 26 and 27), in the words of section 4820 of the Idaho Compiled Statutes, which section pertains to the sounding of bell or whistle, and by such instruction failed to specify that there was no duty imposed, at least upon the brakeman, and we might likewise say, upon the conductor.

The verdict ran against all five defendants, and owing to the sphinx-like silence of the record as to the duties of at least the brakeman and fireman, of course, no negligence of any kind having been proven as against these two defendants, the judgment as to each of them must be reversed.

[8]   Counsel for the appellant tendered to the court a request that certain interrogatories be given as to in what manner, if any, the appellants were negligent, which request was refused and a general verdict was rendered, and the universal rule seems to be, that where several grounds of negligence are alleged in the complaint, a verdict on any one of which would entitle the plaintiff to the relief prayed for and a general verdict is rendered in favor of the plaintiff, an error in the admission of evidence or the giving of an instruction on any one of the grounds will necessitate a reversal for the reason that it cannot be ascertained upon which particular ground the jury found, and if only upon one, it may be that such incompetent evidence or erroneous

instruction resulted in such verdict.   (*Abercrombie v. Stoddard*, 39 Ida. 146, 228 Pac. 232; *Maryland v. Baldwin*, 112 U. S. 490, 5 Sup. Ct. 278, 28 L. ed. 822.)   The adoption of the above rule, which must necessarily be adopted here, makes it impossible for us to say upon which ground or grounds the jury in the instant case decided that the appellant or appellants were negligent.

Certain other assignments of error have been made, but as the matters mentioned therein are not likely to arise on another trial, no discussion will be had thereof.

From what has been said, it necessarily follows that the judgment must be reversed, and it is so ordered and a new trial granted.

Givens, Taylor and T. Bailey Lee, JJ., concur.

Budge, J., took no part.

Wm. E. Lee, C. J., dissents.

Petition for rehearing denied.